UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CODELL PRIDE JR., <br><br> Plaintiff, <br><br> v. <br><br> DR. STRAGA, <br><br> Defendant. | Case No.: 14-CV-414 JLS (DHB) <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** <br><br> (ECF No. 35) |

Presently before the Court is Defendant Dr. Straga's Motion to Dismiss First Amended Complaint, ("MTD," ECF No. 35). Also before the Court are Plaintiff David Codell Pride Jr.'s Response in Opposition to, ("Opp'n," ECF No. 36), and Defendant's Reply in Support of, ("Reply," ECF No. 37), Defendant's MTD. The Court vacated the hearing on the motion and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 40.) After considering the parties' arguments and the law, the Court **GRANTS** Defendant's MTD and **DISMISSES WITHOUT PREJUDICE** Plaintiff's First Amended Complaint.

## BACKGROUND

Plaintiff is currently an inmate at Richard J. Donovan Correctional Facility in California. (First Am. Compl. ("FAC") 1,[1] ECF No. 6.) The events underlying this claim occurred while Plaintiff was an inmate at Calipatria State Prison ("CSP"), also in California. (*Id.*) In 2009, Plaintiff was taking Tramadol prescribed to him by his primary care physician at CSP for chronic knee, neck, back, and shoulder pain. (*Id.* at 3.) On February 24, 2009, Plaintiff was taken off Tramadol and prescribed Neurontin by Defendant, a neurologist named Dr. Straga. (*Id.* at 4.)

Before taking Neurontin, Plaintiff signed a consent form and asked Dr. Straga about the side effects, to which Dr. Straga replied that drowsiness is a side effect. (*Id.*) Dr. Straga did not inquire into Plaintiff's family medical history before prescribing Neurontin. (*Id.* at 6.) After the initial appointment in February 2009, Dr. Straga saw Plaintiff three more times spanning 2009 to 2011, with the final appointment occurring in March 2011. (*Id.* at 27–34.) Plaintiff informed Dr. Straga multiple times during these visits that the Neurontin was not relieving his chronic pain. (*Id.* at 4.) Dr. Straga administered other medications such as oral steroids and performed additional procedures such as trigger-point injections to relieve the pain. (*Id.* at 29–30.)

In addition, Plaintiff states that he suffered "severe" side effects from the Neurontin treatment, including stomach pain and discomfort, a rash on his face, breathing problems, anxiety and depression, thoughts of suicide, numbness in his face, swollen limbs, vision problems, and dizziness. (*Id.* at 10–11.) Dr. Straga provided medications to relieve such side effects, including benzoyl peroxide, Ranitidine, and inhalers. (*Id.* at 11.)

At some point while Plaintiff was taking Neurontin, Dr. Straga prescribed him Robaxin, which Plaintiff then started taking in conjunction with Neurontin. (*Id.* at 4.) At Plaintiff's second appointment with Dr. Straga, the doctor noted that Plaintiff could not

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

tolerate Neurontin anymore due to the swelling of his limbs. (*Id.* at 29.) Dr. Straga's notes from the third appointment, which occurred one month after the second appointment, state Plaintiff was taken off Neurontin because of the swelling side effect and was prescribed Pamelor in its place. (*Id.* at 31.)

Over the course of 2010 Plaintiff was offered electromyograms ("EMG") and nerve conduction studies ("NCS"), which he refused. (*Id.* at 29.) At Plaintiff's third visit with Dr. Straga, the doctor referred him for a neurosurgery consultation. (*Id.* at 31.) Plaintiff now brings claims under 42 U.S.C. § 1983 alleging that Defendant violated his Eighth and Fourteenth Amendment rights, as well as committed an assault against Plaintiff. (*Id.* at 6–7.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible

when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

In the wake of the heightened pleading standard announced in *Twombly* and affirmed in *Iqbal*, the Court remains obligated, "where the petitioner is *pro se,* particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)). However, the Court may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). And "vague and conclusory allegations of official participation in civil rights violations" are not "sufficient to withstand a motion to dismiss." *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

/ / /

/ / /

/ / /

**ANALYSIS**

Judge Marilyn L. Huff dismissed Plaintiff's Original Complaint (ECF No. 1) with leave to amend, (ECF No. 3), on the grounds that his § 1983 claim was time-barred.[2] Plaintiff filed a First Amended Complaint which Defendant now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the grounds that a difference in medical opinion between a patient and his doctor cannot support a claim for deliberate indifference under the Eighth Amendment. (MTD 4.) The Court considers the statute of limitations issue and the substantive Eighth Amendment claim in turn.

**I.   Statute of Limitations**

Granting a motion to dismiss for failure to state a claim is proper if the cause of action is time-barred by a statute of limitations. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). Because § 1983 lacks a statute of limitations, the Court applies the statute of limitations for personal injury actions of the forum state, which, in California's case, is two years. *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007); Cal. Code of Civ. Proc. § 335.1.

Federal law, applying common law tort principles for a §1983 claim, dictates that the statute of limitations commences at the accrual date of the § 1983 claim. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A cause of action accrues when the "plaintiff knows or has reason to know of the injury which is the basis of the action." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999)).

A statute of limitations may be equitably tolled per the forum state's rules. *Fink v. Shedler*, 192 F.3d 911, 916 (9th Cir. 1999). In California, equitable tolling occurs only if the plaintiff meets three conditions: "(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." *Id.*

---

[2] This case was reassigned from Judge Huff to the undersigned on March 6, 2017. (ECF No. 34.)

(quoting *Bacon v. City of L.A.*, 843 F.2d 372, 374 (9th Cir. 1988)).

Plaintiff does not dispute that, but for equitable tolling, his claim would be barred by the two year statute of limitations. Plaintiff first met with Defendant Dr. Straga and was first prescribed Neurontin in February 2009. (FAC 27.) Plaintiff likely became aware of the injury giving rise to this action in "late 2010" when a nurse at the prison noticed his swollen hands and suggested his ailment might be a side effect of Neurontin. (*Id.* at 5.) By March 2011, Plaintiff had his final interaction with Dr. Straga. (*Id.* at 33.) Though Plaintiff likely knew of his injury as early as 2009, he certainly had reason to know of his injury by his last appointment in March 2011. Accordingly, and drawing the favorable inference that Plaintiff did not have reason to know until the latest plausible date, the § 1983 claim must have accrued by March 2011. The statute of limitations therefore ran by March 2013, a year before Plaintiff filed his original complaint in February 2014.

The Order dismissing Plaintiff's original Complaint for failure to state a claim noted Plaintiff did not allege facts supporting a claim for equitable tolling. (*See* ECF Nos. 3, 5.) In his FAC, Plaintiff supplies such facts. Plaintiff notes he was required to comply with 44 U.S.C. § 1997e(a) (the "Prison Litigation Reform Act"), which states that a confined prisoner must exhaust all administrative remedies before filing a § 1983 suit in federal court. (FAC 24.) In due compliance, he commenced an administrative review in September 2012, which ended in August 2013. (*Id.*) He argues this eleven-month period should be tolled. (*Id.*) Granting his argument and exempting this period, the statute of limitations nevertheless ran from March 2011 to September 2012, and from August 2013 to February 2014, a total of twenty-four months. However, Plaintiff additionally argues he diligently conducted a "fact-finding mission" to support his claims in the months preceding the filing of his administrative claim and that therefore this time should also be excluded. (*Id.*) Exempting these preceding months as well, the period of time for which the statute of limitations has run no longer exceeds two years.

The Court agrees with Plaintiff that his seeking administrative review and preparatory research were actions both reasonable and in good faith. Defendant nowhere

indicates that notice of the claim was not timely. And Defendant does not argue that tolling the statute of limitations in this case will prejudice her defense. Taken together, Plaintiff's case merits equitable tolling and therefore the Court concludes that his claim is not time-barred.

## II. Eighth Amendment

An inmate has an Eighth Amendment right to adequate physical and mental health care. *Doty v. Cty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). Deliberate indifference to the serious medical needs of an inmate is inconsistent with the basic standards of human decency and antithetical to the Eighth Amendment's proscription of "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

A determination of deliberate indifference to a serious medical need involves a two-step analysis consisting of both objective and subjective inquiries. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). First, the plaintiff must demonstrate a serious medical need such that failure to provide treatment could "result in further significant injury" or "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Second, the plaintiff must show that the defendant's response to the medical need was deliberately indifferent. *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)).

Deliberate indifference consists of (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (2) harm caused by the indifference. *Id.* Such indifference may be manifested when "prison officials deny, delay[,] or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). This standard is one of subjective recklessness. *Farmer*, 511 U.S. at 839–40. "To satisfy this subjective component of deliberate indifference, the inmate must show that prison officials 'kn[e]w [ ] of and disregard[ed]' the substantial risk of harm, but the officials need not have intended any harm to befall the inmate; 'it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Lemire v. Cal.*

*Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (alterations in original) (quoting *Farmer*, 511 U.S. at 837, 842). "'Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.'" *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)); *Estelle*, 429 U.S. at 106.

Accepting his factual allegations as true, Plaintiff sufficiently pleads a serious medical need. For one, Plaintiff alleges he suffered from chronic pain throughout his body, bulging and ruptured discs, and nerve pain, among other maladies. (FAC 3.) Additionally, Plaintiff sufficiently alleges serious harm from taking Neurontin to treat that chronic pain, including a rash, swollen limbs, and vision problems. (FAC 5.)

But Plaintiff fails to adequately allege that Defendant was deliberately indifferent to that serious medical need. Specifically, Defendant argues Plaintiff fails to state a claim under the first prong of the subjective step—that Defendant knew of a substantial risk to Plaintiff and deliberately disregarded it—because (1) Plaintiff merely alleges a difference of medical opinion between himself and Defendant, and (2) because Defendant's prescribed treatment was not experimental but rather medically acceptable under the circumstances. (*See generally* Reply.)

The Court agrees with Defendant. To be sure, Plaintiff pleads five factual allegations supporting his argument that Defendant was deliberately indifferent to his serious medical needs. But neither is entirely persuasive, as the Court explains below.

*A. Alleged Failure to Inquire into Plaintiff's Family History*

First, Plaintiff alleges that the Defendant's failure to inquire into his family history of "heart, lung, and eyesight problems (glacoma)[sic]; diabetese[sic]; [and] brain tumors" before prescribing Neurontin amounts to deliberate indifference. (FAC 11.)

The Court disagrees that this, on its own, amounts to deliberate indifference. Specifically, there must "be a *conscious* disregard of a serious risk of harm for deliberate indifference to exist." *Toguchi*, 391 F.3d at 1059 (emphasis in original). In *Toguchi*, for

8

14-CV-414 JLS (DHB)

example, the defendant doctor allegedly prescribed medication without first assessing Plaintiff's medical condition and potential to suffer adverse side effects. *Id.* The allegation amounted to mere medical negligence and therefore failed to state a claim of deliberate indifference. *See id.* (affirming grant of defendant's motion for summary judgment).

In the present case, the failure to inquire into Plaintiff's family history is like the failure to fully examine the patient in *Toguchi*. Although both failures might be construed as medical malpractice, that is insufficient to support a claim for deliberate indifference.

### B. Failure to Exhaustively Discuss with Plaintiff the Potential Side Effects of Neurontin, Prescribed Either Alone or in Conjunction with Robaxin

Second, Plaintiff alleges that Defendant "deliberately mislead [sic] Plaintiff about the dangerous side effects of [Neurontin]." (FAC 6.) However, this is a conclusory allegation and therefore need not be taken as true. *Iqbal*, 556 U.S. at 677. No facts plausibly support the claim that Defendant deliberately misled Plaintiff. To the contrary, Plaintiff notes that he asked about the side effects of Neurontin and Defendant replied that one side effect is drowsiness. (FAC 4.) The only facts pled in support of the claim that Defendant deliberately misled Plaintiff are in Exhibit D, which in Plaintiff's words are "examples of what a physician should so inform a patient." (FAC 9.) But even taking Plaintiff's conclusion as true that standard medical practice for prescribing Neurontin is to discuss more side effects than just drowsiness,[3] Defendant's failure to do so is—at best—a breach of duty amounting to possible medical malpractice. And under *Hamby* and *Toguchi*, each of these allegations is insufficient to state a claim of deliberate indifference because each alleges medical negligence.

### C. The Change from Tramadol to Neurontin in Plaintiff's Treatment Plan

Third, Plaintiff alleges Dr. Straga discontinued Tramadol in favor of Neurontin for (1) reasons related to cost and (2) because too many other prisoners were requesting

---

[3] In addition to the claim that Defendant did not fully discuss all side effects of Neurontin, Plaintiff alleges Defendant failed to discuss possible side-effect synergies between Neurontin and Robaxin. (Opp'n 16.)

Tramadol. (FAC 7.) He alleges deliberate indifference because Defendant "interfered with Plaintiff's already prescribed medical treatment which was effective in treating Plaintiff's pain with no side-effects." (*Id.*)

The choice to pursue one treatment among alternatives may support a deliberate indifference claim if the elected course of treatment "was medically unacceptable under the circumstances" and was chosen in "conscious disregard of an excessive risk to the prisoner's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (declining to grant summary judgment for doctors where Plaintiff alleged they denied him a kidney transplant out of personal animosity). However, as discussed, a mere difference of medical opinion regarding alternate courses of treatment between the doctor and the patient may not support a claim of deliberate indifference. *Id.*

Here, Plaintiff cites no authority suggesting that changing a prescription for non-medical reasons in itself makes the treatment medically unacceptable under the circumstances or may otherwise support a claim of deliberate indifference. Nor does Plaintiff cite authority suggesting that failure to provide a particular medication among acceptable alternatives may suffice to state a claim for deliberate indifference. The crux of Plaintiff's complaint is that Defendant substituted one drug for a drug Plaintiff felt was "ideal for his condition." (*Id.* at 9.) Plaintiff's belief that one drug was better is non-actionable under the Eighth Amendment.

Plaintiff relies on *Estelle*, 429 U.S. at 105, for the proposition that when a prison official "intentionally interferes" with an already prescribed treatment he may be held deliberately indifferent. (Opp'n 10.) And he relies on *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992), for the proposition that treating a patient based on a medical opinion "a reasonable person would likely determine to be inferior" may support a deliberate indifference claim. (Opp'n 12.)

*Estelle* is inapposite. Here, Defendant replaced one treatment with another treatment. Nothing in *Estelle* suggests that once a treatment is prescribed it may never be changed. Additionally, Plaintiff mischaracterizes *Hamilton* by failing to provide relevant context. In

*Hamilton*, Plaintiff alleged that prison officials in bad faith sought a medical opinion from a doctor who had never examined the patient-prisoner in order to justify moving Plaintiff from one facility to another, in direct conflict with Plaintiff's examining physician's order that Plaintiff not be moved. 981 F.2d at 1067. The reasonable person standard in *Hamilton* refers to what a reasonable prison official would believe to be a constitutional violation under qualified immunity doctrine—seeking an opinion in bad faith from a doctor who had never examined the patient could be unreasonable, for example. *Id.* The standard does not apply to a prison doctor, who has examined the patient, as in this case, and acts according to her own medical opinion. Thus, these authorities do not support Plaintiff's claim.

### ***D. Prescribing Neurontin Despite Supposed Evidence that Neurontin Is Not Efficacious for Treating Plaintiff's Ailment***

Fourth, Plaintiff argues that prescribing Neurontin amounted to "no treatment at all" because the court *In re Neurontin Mktg. & Sales Practices Litig. (Kaiser Findings)*, No. 04-cv-10739-PBS, 2011 WL 3852254 (D. Mass. Aug. 31, 2011), ruled that Neurontin is not effective at relieving nerve pain. (Opp'n 17.) The Court agrees with Defendant that Plaintiff mischaracterizes that case. The case concerned Pfizer's fraudulent marketing of Neurontin for off-label uses; it did not concern allegations that Neurontin was sold contrary to FDA rulings deeming it either dangerous or inefficacious for treating nerve pain in general. Nor does Plaintiff provide citations to such rulings. (*See generally* Pl. Obj. to Def. Reply ("Obj."), ECF No. 42.)

However, even accepting Plaintiff's allegation as true that Neurontin did not and could not possibly work to relieve his symptoms, he still fails to state a claim for deliberate indifference. At Plaintiff's first appointment after being prescribed Neurontin, Defendant noted that Plaintiff believed the Neurontin was not working, and, in response, suggested Effexor and eventually prescribed Pamelor. (FAC 31.) Defendant also performed trigger-point injections to relieve nerve pain. (*Id.*) Moreover, before Defendant prescribed Plaintiff Neurontin, she attempted to treat him with "Tylenol 3 with Codeine." (Obj. 7.) Plaintiff does not allege that Defendant failed to treat him, but instead merely alleges one drug in a

string of attempts to treat him was not FDA-approved. This does not support a claim of deliberate indifference.

### *E. Alleged Failure to Treat Plaintiff's Side Effects Caused by Neurontin*

Finally, Plaintiff states that "Dr. Straga discontinue [sic] the neurontin treatment because nurse Matthews requested the name of the Dr. who prescribed the drug and reported I needed to be taken off neurontin" after the nurse allegedly noticed Plaintiff's swollen hands. (Opp'n 8.) He further states that he "experienced other side-effects which [he] received treatment for, but, was not so informed were due to Neurontin." (FAC 11.) Plaintiff does not allege that Defendant was aware of a substantial risk to Plaintiff and consciously disregarded it. To the contrary, Plaintiff's own statement suggests that once Defendant was made aware of Plaintiff's side effects she took him off Neurontin. Moreover, Defendant noted Plaintiff's discomfort with Neurontin and prescribed several medications to alleviate the side effects. (FAC 11, 27–34.) Thus, based on his own allegations, Plaintiff fails to state a claim that Defendant's deliberate indifference caused him to wantonly suffer from the side effects of Neurontin. Accordingly, the Court **GRANTS** Defendant's MTD (ECF No. 35).

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's MTD (ECF No. 35). While the Court harbors serious doubts concerning Plaintiff's ability to adequately re-plead these claims against Defendant, the Court will allow Plaintiff another opportunity to amend his Complaint. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Defendant. Plaintiff **SHALL FILE** an amended complaint, if any, <u>on or before thirty days from the date on which this Order is electronically docketed</u>. *Failure to*

/ / /

/ / /

/ / /

/ / /

/ / /

14-CV-414 JLS (DHB)

*file an amended complaint by this date may result in Plaintiff's Eighth Amendment claims being dismissed with prejudice.*

**IT IS SO ORDERED.**

Dated: July 31, 2017

*[signature]*
Hon. Janis L. Sammartino
United States District Judge