UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CODELL PRIDE, JR.,<br><br>                        Plaintiff,<br><br>v.<br><br>DR. STRAGA,<br><br>                        Defendant. | Case No.: 14-CV-414 JLS (DHB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 45) |

Presently before the Court is Defendant Dr. Straga's Motion to Dismiss Third Amended Complaint, ("MTD," ECF No. 45). Also before the Court are Plaintiff David Codell Pride Jr.'s Response in Opposition to, ("Opp'n," ECF No. 46), and Defendant's Reply in Support of, ("Reply," ECF No. 47), Defendant's MTD. The Court vacated the hearing on the motion and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 40.) After considering the parties' arguments and the law, the Court **GRANTS** Defendant's MTD, (ECF No. 45), and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Third Amended Complaint.

/ / /

/ / /

/ / /

# BACKGROUND

Plaintiff is currently an inmate at Richard J. Donovan Correctional Facility in California. (First Am. Compl. ("FAC") 1, ECF No. 6.)[1] The events underlying this claim occurred while Plaintiff was an inmate at Calipatria State Prison ("CSP"), also in California. (*Id.*) In 2009, Plaintiff was taking Tramadol prescribed to him by his primary care physician at CSP for chronic knee, neck, back, and shoulder pain. (*Id.* at 3.) On February 24, 2009, Plaintiff was taken off Tramadol and prescribed Neurontin by Defendant, a neurologist treating Plaintiff. (Third Am. Compl. ("TAC") ¶ 6, ECF No. 44.)[2]

After the initial appointment, Plaintiff had several more primary care appointments with Dr. Straga between February 2009 and July 2010. (*Id.* ¶ 7.) Plaintiff informed Dr. Straga during these visits that the Neurontin was not relieving his chronic pain. (*Id.* ¶ 8.) There are no further factual allegations that illuminate what happened concerning Plaintiff's treatment after July 2010. From those factual allegations, Plaintiff concludes that Defendant knew the Neurontin treatment regimen provided Plaintiff no relief. (*Id.* ¶ 11.) Plaintiff also alleges that Defendant failed to provide treatment, "[d]espite the diagnose [sic] of central neuropathic pain, and repeated complaints by plaintiff and request [sic] for a different method of treatment which would have brought his pain and treatment needs to an acceptable level of care." (*Id.* ¶¶ 12–13.)

Plaintiff now brings a claim under 42 U.S.C. § 1983 alleging that Defendant violated his Eighth Amendment right. (*Id.* ¶ 18.)

///

///

---

[1] The Court recites these background facts from Plaintiff's First Amended Complaint, rather than his present Third Amended Complaint, because he omits these details from his Third Amended Complaint.
[2] It does not appear that Plaintiff filed a Second Amended Complaint. He labeled his most recent complaint: "Third Amended Complaint for Damages." (ECF No. 44.) The Court will refer to the complaint currently pending as Plaintiff's Third Amended Complaint, or TAC, even though it is only the second amended complaint.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id.*

In the wake of the heightened pleading standard announced in *Twombly* and affirmed in *Iqbal*, the Court remains obligated, "where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)). However, the Court may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). And "vague and conclusory allegations of official participation in civil rights violations" are not "sufficient to withstand a motion to dismiss." *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

### I. Eighth Amendment Standard

An inmate has an Eighth Amendment right to adequate physical and mental health care. *Doty v. Cnty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). "To establish unconstitutional treatment of a medical condition . . . a prisoner must show deliberate indifference to a "serious" medical need. *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)). Deliberate indifference to the serious medical needs of an inmate is inconsistent with the basic standards of human decency and antithetical to the Eighth Amendment's proscription of "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

A determination of deliberate indifference to a serious medical need involves a two-step analysis consisting of both objective and subjective inquiries. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). First, the plaintiff must demonstrate a serious

medical need such that failure to provide treatment could "result in further significant injury" or "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Second, the plaintiff must show that the defendant's response to the medical need was deliberately indifferent. *Id.* (citing *McGuckin*, 974 F.2d at 1059–60).

Deliberate indifference consists of (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (2) harm caused by the indifference. *Id.* Such indifference may be manifested when "prison officials deny, delay[,] or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). This standard is one of subjective recklessness. *Farmer*, 511 U.S. at 839–40. "To satisfy this subjective component of deliberate indifference, the inmate must show that prison officials 'kn[e]w [ ] of and disregard[ed]' the substantial risk of harm, but the officials need not have intended any harm to befall the inmate; 'it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (alterations in original) (quoting *Farmer*, 511 U.S. at 837, 842). "Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)); *see Estelle*, 429 U.S. at 106.

## II. Application

### A. Serious Medical Need

Accepting his factual allegations as true, Plaintiff sufficiently pleads a serious medical need. Plaintiff alleges he suffered from chronic pain throughout his body, bulging and ruptured discs, and nerve pain, among other maladies. (TAC ¶ 4.)

///

///

### B. Deliberate Indifference

The Court turns to the second element, deliberate indifference. Plaintiff alleges that during his appointments with Defendant he complained to Defendant that she "purposefully failed to provide plaintiff with treatment that was effective in meeting his treatment needs with a regiment [sic] of care that was adequate in treating his medical needs and relieving his chronic pain, and which met community standards." (*Id.* ¶ 8.) In sum, Plaintiff believes his treatment was ineffective, (*see id.* ¶ 11 ("Defendant Straga failed to afford plaintiff with treatment that was effective.")), and inadequate to relieve his chronic pain, (*see id.* ¶ 12 ("[Defendant] failed to provide treatment which reduced or relived [sic] plaintiff's medical needs.")).

Defendant argues that her decision to discontinue Tramadol in favor of Neurontin is simply a difference of opinion and is not actionable.[3] (MTD 5.) Defendant states that Plaintiff does not allege that Dr. Straga refused to provide any pain medication, but rather Plaintiff was critical of the specific medication prescribed, i.e., he did not want Neurontin, but did want a different drug. (*Id.*)

Generally, difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." *Toguchi*, 391 F.3d at 1058 (alteration in original) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). However, the choice to pursue one treatment among alternatives may support a deliberate indifference claim if the elected course of treatment "was medically unacceptable under the circumstances" and was chosen in "conscious disregard of an excessive risk to the prisoner's health." *Jackson*, 90 F.3d at 332 (declining to grant summary judgment for doctors where the

---

[3] Defendant also argues Plaintiff's Third Amended Complaint omits several critical allegations, previously included in the First Amended Complaint, that are important to the context of Plaintiff's claims. (MTD 2.) For example, the TAC omits Plaintiff's previous factual allegation that his Neurontin prescription was discontinued in July 2010 due to patient compliance issues. (*Id.*; FAC 29.) Nor did Defendant's care end in July 2010—Plaintiff previously alleged that he had follow up visits with Defendant and was prescribed other treatment regimes by Defendant. (MTD 2–3; FAC 29–31.) The Court understands Defendant's concern, but concludes that Plaintiff's claim fails as a matter of law without considering the omitted context between Plaintiff's First and Third Amended Complaints.

plaintiff alleged they denied him a kidney transplant out of personal animosity).

*1. Whether the Elected Course of Treatment Was Medically Unacceptable*

Plaintiff argues that he will be able to show that the FDA did not approve prescribing Neurontin for treatment of symptoms associated with central neuropathic pain and thus his treatment was medically unacceptable. (Opp'n 7.) His theory is predicated on a district court opinion in *In re Neurontin Mktg. & Sales Practices Litig.*, 799 F. Supp. 2d 110 (D. Mass. 2011), which purportedly held that Neurontin is not effective at relieving nerve pain. (Opp'n 8.)

That case concerned Pfizer's fraudulent marketing of Neurontin for off-label uses. *See In re Neurontin*, 799 F. Supp. 2d at 112. As part of its finding of fact, the district court made several findings concerning Neurontin's efficacy for off-label uses, including neuropathic pain. *See In re Neurontin Mktg. & Sales Practices Litig.*, No. 04-cv-10739-FBS, 2011 WL 3852254, at *34 (D. Mass. Aug. 31, 2011). Specifically, the court found that

> there is no reliable scientific evidence that Neurontin is effective for bipolar disorder, migraine, or at high doses. With respect to some kinds of neuropathic pain, there is some scientific evidence of efficacy. However, as the FDA found, there is no reliable scientific evidence to support a broad indication of neuropathic pain.

*Id.* The court went on to discuss several double-blind, randomized, control trials assessing Neurontin's off-label efficacy for neuropathic pain. The court found:

> After a review of 12 [double blind trials] studying the use of Neurontin in the treatment of neuropathic pain, and a careful consideration of the expert testimony, the Court finds that there is no generally accepted scientific evidence that Neurontin is effective in the treatment of neuropathic pain as a broad category or indication. This is a closer call because, unlike migraine and bipolar disorder, there are four [double-blind trials] that concluded that Neurontin was better than placebo for treating certain narrow indications like postamputation phantom limb pain, neuropathic pain after spinal cord injury, and

> Complex Regional Pain Syndrome I. . . . However, using the generally accepted standard of scientific efficacy followed by the FDA and the scientific community (requiring two [double-blind trials] that demonstrate efficacy), the Court is persuaded that there is insufficient reliable evidence of the efficacy of Neurontin with respect to the broad indication of neuropathic pain.

*Id.* at *43.

The findings of fact in *In re Neurontin Marketing & Sales Practices Litigation* do suggest that Plaintiff has a point that Neurontin's off-label efficacy is not conclusive. However, Plaintiff's reliance on this one case sweeps too broadly. The finding of fact was made with respect to a "broad indication of neuropathic pain." *Id.* This does not speak to the circumstances as they apply to Plaintiff's own medical situation.

Further, the district court did note that Neurontin did have some efficacy with respect to some kinds of neuropathic pain. *Id.* at *34. The court stated that its finding was a close call because there were four double-blind trials that concluded "Neurontin was better than placebo for treating certain narrow indications like postamputation phantom limb pain, neuropathic pain after spinal cord injury, and Complex Regional Pain Syndrome I."[4] *Id.* at *43. The primary issue with relying on a case like *In re Neurontin Marketing & Sales Practices Litigation* is that the district court's conclusions speak to the broad contours of Neurontin efficacy (or lack thereof) but those conclusions do not take into account the particulars of Plaintiff's medical situation. The Court finds Plaintiff has not alleged sufficient facts to show how the elected course of treatment was medically unacceptable.

///

---

[4] Further, it appears that at the time of Plaintiff's treatment Neurontin was approved by the California Department of Corrections and Rehabilitation ("CDCR"), but removed from CDCR's formulary after 2011. *See Haney v. Nangalama*, No. 11-cv-1218-MCE-CMK-P, 2013 WL 4482866, at *1 (E.D. Cal. Aug. 20, 2013); *Johnson v. Sepulveda*, No. 11-cv-6693-JST (PR), 2013 WL 5313133, at *1–2 (N.D. Cal. Sept. 23, 2013). While this does undercut the scientific argument for Neurontin's efficacy, it bolsters Defendant's position because Defendant was prescribing a course of treatment approved by CDCR at the time of Plaintiff's allegations.

*2. Whether Defendant Consciously Disregarded Excessive Risk to Plaintiff's Health*

"To satisfy this subjective component of deliberate indifference, the inmate must show that prison officials 'kn[e]w [ ] of and disregard[ed]' the substantial risk of harm, but the officials need not have intended any harm to befall the inmate; 'it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Lemire*, 726 F.3d at 1074 (alteration in original) (quoting *Farmer*, 511 U.S. at 837, 842). In *Farmer*, the Supreme Court held that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837.

Here, the only allegation Plaintiff puts forward is that during his appointments with Defendant he complained to her about the treatment. (*See* TAC ¶ 8.) There are no factual allegations that Defendant knew of an excessive risk. There are no factual allegations that, with the knowledge of the excessive risk to Plaintiff, Defendant disregarded that risk. For example, in his TAC Plaintiff fails to allege any facts as to what happened after July 2010. (*See id.* ¶ 7.) Even assuming, for the sake of argument, Defendant knew Neurontin constituted an excessive risk to Plaintiff's medical condition, Plaintiff omits any factual allegations as to what Defendant did or did not do after receiving his complaints.

In his opposition, Plaintiff seems to suggest that Defendant's action was punitive because Defendant viewed Plaintiff as a "Complainer." (Opp'n 7 ("Plaintiff will offer evidence that Dr. Straga often labelled [sic] plaintiff as a "Complainer" and because she viewed plaintiff as a "Complainer," she deliberately prescribed a Treatment Plan that provided ineffective treatment for his chronic pain.").) This argument fails for two

reasons. First, factual allegations must be included in a complaint and not contained in an opposition brief. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[I]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Second, there are no allegations connecting Defendant purportedly labeling Plaintiff a "complainer" to his allegedly deficient medical treatment.

Thus, Plaintiff has not alleged sufficient facts to allow the Court to infer that Defendant consciously disregarded an excessive risk to Plaintiff.

In sum, this is a difference of opinion between a physician and a prisoner, which is insufficient as a matter of law to establish deliberate indifference. The crux of Plaintiff's complaint is that Defendant substituted Neurontin for his previously subscribed Tramadol and then he was treated with Neurontin from February 2009 to July 2010. (TAC ¶¶ 6–7.) There are no further factual allegations, only conclusory statements like Defendant "failed to provide treatment which reduced or relived [sic] plaintiff's medical needs." (*Id.* ¶ 11.) Plaintiff previously alleged more detailed factual allegations, (*see generally* FAC), but chose to include significantly less detail in his TAC. Accordingly, the Court **GRANTS** Defendant's MTD, (ECF No. 45).

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's MTD (ECF No. 45). The Court continues to harbor serious doubts that Plaintiff will be able to adequately re-plead his claims against Defendant. However, because Plaintiff is a prisoner, proceeding pro se, and alleging a civil rights claim the Court will allow amendment. *See Hebbe*, 627 F.3d at 342; *DeSoto*, 957 F.2d at 658. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's Third Amended Complaint.

///

///

///

Plaintiff **SHALL FILE** an amended complaint, if any, on or before <u>thirty (30) days on the date this Order is electronically docketed</u>. *Failure to file an amended complaint by this date may result in Plaintiff's Eighth Amendment claims being dismissed with prejudice.*

**IT IS SO ORDERED.**

Dated: April 10, 2018

Hon. Janis L. Sammartino
United States District Judge